J-S15036-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| DANTE LAMA BURTON | : |
| | : |
| Appellant | : No. 449 EDA 2025 |

Appeal from the PCRA Order Entered February 4, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1100571-2004

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 27, 2026**

Appellant, Dante Lama Burton, appeals from the order entered February 4, 2025, in the Court of Common Pleas of Philadelphia County denying his petition for relief filed pursuant to the Post Conviction Relief Act (hereinafter "PCRA"). After review, we affirm.

This Court has previously incorporated the following trial court summary of the events underlying Appellant's conviction:

> On August 28, 2004, just after midnight, [Appellant] was in the basement apartment of his girlfriend, Shawnise Stone, in the Mt. Airy section of Philadelphia. The decedent in this case, Kevin Davis, had a girlfriend, Luchania McCullough, who also lived in the basement apartment and was Ms. Stone's roommate and first cousin.
>
> The decedent knocked at the basement door from the backyard area that led into the basement apartment. At that time, Durrell

_____

[*] Former Justice specially assigned to the Superior Court.

Lloyd was in the apartment visiting Ms. McCullough. She thought that the decedent would be jealous, so she told Mr. Lloyd to leave the basement apartment by going upstairs and leaving out of the house by way of the first floor. Unfortunately, as he was entering the basement apartment, the decedent saw Mr. Lloyd going upstairs and began to question Ms. McCullough as to who had been there to see her.

An argument ensued between the decedent and Ms. McCollough about the situation, and it soon escalated to eventually include Ms. Stone and her mother. In fact, when the decedent went upstairs to look for Mr. Lloyd; he was told by the mother that he had no business wandering around her house. The decedent then began to argue even more heatedly with [Appellant]'s girlfriend. As they continued to curse at each other, she ordered him out of her apartment and the house.

The decedent walked out the back door of the basement apartment and into the backyard. [Appellant] followed him into the backyard, and made comments to the effect that he wanted to make sure that the decedent was "okay." Both Ms. McCullough and another person who lived in the house, Monique Shenoster, testified that they watched [Appellant] walk behind the decedent as the two of them left the backyard and walked into a nearby alley. Ms. Shenoster was watching from a second floor window, and she testified that within seconds after they got out of her view she heard three or four gunshots. She then saw [Appellant] run out of the alley, and heard Ms. McCullough screaming in the backyard.

Ms. McCullough told the jury that after Ms. Stone told the decedent to leave the house, she observed and heard [Appellant] tell him, "I will walk with you." She said that [Appellant] proceeded to walk out behind the decedent and into the backyard. She testified that she went back to her room and could not see either man once they left the basement. However, she stated that she heard "about four" gunshots "maybe two minutes later."

Ms. McCullough ran outside with her cousin, and saw [Appellant] coming out of the alley. She testified that he "looked like he was putting something in his pants" as he walked out of the alley towards the basement apartment. Once he was in the basement apartment, [Appellant] was doing something in the closet there

and said, "Let me get the shells." He then ran outside and was not present when the police and paramedics arrived at the house.

[Appellant] gave a detailed inculpatory statement to the homicide detectives on August 31, 2004. He had already given a statement in which he denied culpability on August 28th, but he returned to the homicide division with his family three days later. He had been calling Detective Aaron Booker to tell him that he was being threatened and did not feel safe. Detective Booker told him to come to the homicide division on the 31st, and that they would discuss the situation.

When [Appellant] arrived at 2:55 a.m., Detective Booker was not there. He did not get to the homicide division until approximately 4:00 a.m. when he conversed with [Appellant] and his family about the threats and his fears. Detective Booker was emphatic in his trial testimony that [Appellant] was never under arrest prior to his making the inculpatory statement, and that he was free to leave at any time up to that point.

Detective Booker left the homicide division at 4:20 a.m. to check out information that [Appellant] had just given him, but [Appellant] and his family stayed. He returned at 9:00 a.m., and eventually confronted [Appellant] with the fact that he did not believe the account that he had given him earlier that day. Sometime after 1:00 p.m. on the 31st, Detective Booker warned [Appellant] of his Miranda rights and began to take a formal statement from him. [Appellant] had actually conversed with his family in person and on the phone just prior to his giving the inculpatory statement to Detective Booker.

In his statement, [Appellant] admitted that he followed the decedent out of the basement apartment, but he insisted that his intent was to get him to calm down. He contended in the statement that the decedent began to become angry with him and started to curse at him. He continued in his statement by alleging that the decedent turned around and moved his hand "towards his waist." [Appellant] pulled out his gun and shot the decedent because he "was scared" that he was the one who was about to be shot. He said that he threw the gun into a river near the Philadelphia Zoo, and went home after the shooting to change his clothes. He was arrested at the homicide division shortly after completing and signing the inculpatory statement at 3:00 p.m. on August 31, 2004.

- 3 -

*Commonwealth v. Burton*, 175 A.3d 415 (Pa. Super. 2017)(unpublished).

The PCRA Court summarized the subsequent procedural history of the case thusly:

> On August 1, 2005, a jury sitting before Judge Rogers convicted Appellant of murder of the first degree, VUFA, and possession of an instrument of crime (PIC). On September 15, 2005, Judge Rogers sentenced [Appellant] to the mandatory sentence of life without the possibility of parole for murder, with a consecutive term of three and a half to seven years of incarceration for PIC. After a lengthy back and forth in the appellate courts, his judgment of sentence was affirmed by the Superior Court on July 26, 2017, and on January 23, 2018, the Pennsylvania Supreme Court denied Appellant petition for allowance of appeal.

PCRA Court Opinion filed August 13, 2025 (hereinafter "PCRA Court Opinion") at 3-4 (unpaginated).

To expand on Appellant's prior appeals, we note Appellant filed his initial direct appeal on October 7, 2005, however, his then-counsel failed to file a timely 1925(b) statement, which resulted in waiver of all issues, and this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Burton*, 943 A.2d 309 (Pa. Super. 2007), *petition for allowance of appeal denied*, 952 A.2d 674 (Pa. 2008). On August 10, 2008, Appellant filed a *pro se* PCRA petition seeking *nunc pro tunc* reinstatement of his direct appeal rights, which was granted by order on July 15, 2010, and a second direct appeal was filed on August 16, 2010. *See Commonwealth v. Burton*, 175 A.3d 415 (Pa. Super. 2017). Appellant's direct appeal counsel filed a timely 1925(b) statement on October 1, 2010, and then, without leave of court, filed a second, untimely 1925(b) statement on December 3, 2010. Upon review, this

court found the issues raised solely in the December 3, 2010, statement had been waived. *Id.*

On June 10, 2013, Appellant filed a subsequent PCRA petition, and an amended petition on October 2, 2015. *Id.* In agreement with the Commonwealth, the trial court again reinstated Appellant's direct appeal rights *nunc pro tunc*, and on December 9, 2015, Appellant filed a timely notice of appeal, raising the previously-waived issues contained in Appellant's December 3, 2010, 1925(b) statement, arising from denial of Appellant's motion to suppress as well as alleged prosecutorial misconduct based upon certain statements made by the prosecution during its closing argument. *Id.*

Regarding Appellant's challenge to the denial of his motion to suppress, this Court squarely held:

> [A]s Appellant's questioning was neither repeated nor prolonged, he was not detained prior to his confession, he was advised of his constitutional rights, and he was not injured, ill, drugged, intoxicated, hungry, sleep-deprived, in need of medical attention, physically abused, nor threatened with abuse, we conclude that the trial court correctly found that Appellant's confession was voluntary. Hence, we hold that the trial court correctly denied Appellant's suppression motion, and, therefore, that Appellant's first issue raised on appeal is meritless.

*Id.* (Internal citation omitted).

Regarding the challenges arising from the Commonwealth's alleged misconduct during its closing statement, this Court observed that the trial court had presented an accurate restatement of the law, but*, due to the failure of Appellant's counsel to ensure this Court was provided with a transcript of*

*the closing argument at issue*, we were "unable to review the trial court's analysis or conclusions." ***Id.***

Thus, this Court affirmed Appellant's judgment of sentence, holding that the suppression issue lacked merit and the issue arising from the Commonwealth's closing statement had been waived for failure to ensure the certified record was complete for the purpose of appellate review. ***Id.***

Next,

Appellant filed a timely pro se PCRA petition on November 14, 2018. The initially appointed PCRA counsel, Douglas Dolfman, Esquire, filed a no merit *Finley* letter in February of 2020. On August 30, 2021, current PCRA counsel, Teri Himebaugh, Esquire, entered her appearance. Counsel filed an amended petition on April 1, 2022, and a supplemental petition on October 25, 2023.

\*\*\*

On February 4, 2025, the Honorable Scott DiClaudio, sitting as the PCRA Court, held an evidentiary hearing where testimony from Appellant was heard. Judge DiClaudio dismissed the petition that same day.

On February 8, 2025, Appellant, through counsel, filed an appeal of Judge DiClaudio's Order dismissing his PCRA petition.

PCRA Court Opinion filed August 13, 2025 (hereinafter "PCRA Court Opinion") at 3-4 (unpaginated).

Appellant raises the following issues for our review:

I. Did the PCRA Court err when it found that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution were not violated due to counsel on direct appeal's waiver of a potentially meritorious claim?

Suggester Answer: Yes

II.    Did the PCRA Court err when it found that trial counsel was not ineffective and did not violate Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution for not making the proper arguments at the suppression hearing and not having Appellant testify?

Suggested Answer: Yes

III.    Did the PCRA Court err, when it found that counsel at trial and/or on direct appeal were not ineffective and did not violate Appellant's constitutional rights under the Sixth Amendment of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution for failing to preserve and properly present a claim that the trial court erred in not permitting admission of the criminal record of the victim?

Suggested Answer: Yes

IV.    Did the PCRA Court err, when it found that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. constitution and Article 1, sec. 9 of the Pennsylvania Constitution were not violated due to trial counsel's failure to object to the jury instruction on voluntary manslaughter. Counsel who remained on direct appeal was not ineffective for waiving the claim? [sic]

Suggested Answer: Yes

V.    Did the PCRA Court err, when it found that the cumulative impact of the above claims did not have sufficient merit?

Suggested Answer: Yes

Appellant's Brief at 6-7.

In reviewing the denial of a PCRA petition, we examine:

"whether the PCRA court's conclusions are supported by the record and free from legal error.  In so doing, we defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility. Our standard of review over a PCRA court's legal conclusions is *de novo.*"

*Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023).

The petitioner "has the burden of persuading [the appellate c]ourt that the PCRA court erred and that such error requires relief." *Commonwealth v. Montalvo*, 651 Pa. 359, 205 A.3d 274, 286 (Pa. 2019). In so doing, Appellant must overcome a presumption that counsel rendered effective assistance by pleading and proving, by a preponderance of the evidence, that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. *Commonwealth v. Orlando*, 2017 PA Super 52, 156 A.3d 1274, 1281 (Pa.Super. 2017). Failure to satisfy any of these three prongs results in failure of the ineffectiveness claim. *Id.*

Further,

A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, but for counsel's error, the outcome of the proceedings would have been different.

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009).

Appellant's first issue primarily challenges the efficacy of direct appeal counsel in Appellant's untimely filing of their December 3, 2010, 1925(b) statement relative to Appellant's August 16, 2010, direct appeal. Appellant's Brief at 16-22.

Preliminarily, we reiterate that counsel's late filing of the December 2010, 1925(b) statement indeed did result in waiver of the claim underlying Appellant's first issue. However, this error has already been remedied. Again, by agreement of the parties, following Appellant's second PCRA petition, Appellant's direct appeal rights were reinstated *nunc pro tunc* by order on December 8, 2015. Appellant was then able to pursue a subsequent direct appeal filed on December 9, 2015. **See Commonwealth v. Burton**, 175 A.3d 415 (Pa. Super. 2017). As such, initial direct appeal counsel's failure has been previously litigated and cannot form the basis of eligibility for additional PCRA relief. 42 Pa.C.S. § 95439(a)(3)("To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence [*inter alia* t]hat the allegation of error has not been previously litigated or waived); 42 Pa.C.S. §9544("For purposes of this subchapter, an issue has been previously litigated if []  it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.")

It is not until the final two sentences of this section of Appellant's argument that Appellant references the waiver of this issue in Appellant's most recent direct appeal filed December 9, 2015, based upon prior counsel's presentation of an incomplete record for this Court's review. Appellant's brief at 24. There, he merely states:

> "As the PCRA Court noted, the notes of testimony from the closing argument were missing. The Superior Court was therefore unable to properly review the claim on its' merits on direct appeal."

*Id.*

Here, we note with displeasure that instant counsel has failed to submit the complete transcript of the Jury Trial at issue, and further counsel did not deign to submit transcripts of the PCRA Hearings relative to the instant petition in the reproduced record. Rather, by way of transcripts, counsel provided this Court with only excerpts from the "Trial (Jury) Volume 3" transcript dated July 29, 2005[1], the Suppression Hearings dated July 25 and 26, 2005, and the Sentencing Hearing dated September 15, 2005.[2] While the excerpts provided include some of the portions of trial at issue, as we have discussed above, assessment of Appellant's claim requires a determination not only of the underlying merit of the issue presented, but of *prejudice*, i.e., but for the claimed ineffective assistance of counsel, the result of the proceedings would have been different. Without full notes of testimony relative to those proceedings, it is impossible for this Court to determine whether prior counsel was indeed ineffective.

Thus, proceeding with the understanding that Appellant attempts to claim counsel who represented Appellant in the direct appeal filed December

_____

[1] While this Court says "excerpts," we are in reality provided with only the even-numbered pages of the document. We will not speculate as to how or why the odd-numbered pages were omitted.

[2] This Court was able to obtain copies of the notes of testimony relative to the PCRA Hearings held relative to the instant petition on September 10, 2024, and February 4, 2025, however, despite making an effort to do so, this Court was again unable to obtain the remaining notes of testimony relative to Appellant's 2005 jury trial. **See Commonwealth v. Burton**, 175 A.3d 415 (Pa. Super. 2017).

9, 2015, was ineffective for failing to present a complete record to this court and thereby waiving the issue arising from alleged prosecutorial misconduct, instant counsel's own failure to provide a complete record to this court precludes meaningful review, and we are constrained to find that this issue is waived.

Indeed, failure to present this Court with the full notes of testimony relative to Appellant's trial precludes meaningful review of Appellant's third, fourth, and fifth issues, as well, as each are predicated on either errors of trial counsel or errors of appellate counsel in failing to preserve claims arising from the same. We are therefore constrained to find that these issues are also waived.

While we are able to review Appellant's second issue, as the same arises from alleged errors of trial counsel in litigating Appellant's suppression motion, and all notes of testimony relative to the suppression motion and the PCRA Hearings are now available to this Court, we conclude that the issue is meritless. We note again that this Court previously affirmed Appellant's conviction despite a prior challenge to the denial of his suppression motion on direct appeal, holding that:

> [A]s Appellant's questioning was neither repeated nor prolonged, he was not detained prior to his confession, he was advised of his constitutional rights, and he was not injured, ill, drugged, intoxicated, hungry, sleep-deprived, in need of medical attention, physically abused, nor threatened with abuse, we conclude that the trial court correctly found that Appellant's confession was voluntary. Hence, we hold that the trial court correctly denied Appellant's suppression motion

**Burton**, *supra*.

Here, Appellant alleges that trial counsel was ineffective in litigating this issue where counsel did not call Appellant to testify at the suppression hearing and did not make 'the proper arguments' at that hearing. Appellant's Brief at 25. However, after hearing Appellant testify at the PCRA Hearing, the PCRA Court yet concluded "there is no evidence that any Judge would have suppressed [Appellant's inculpatory] statement." PCRA Opinion at 6.

After review of the record, and giving deference to the PCRA Court's findings of fact and assessment of credibility, we see no basis to depart from our prior analysis of the trial court's denial of Appellant's motion to suppress. This issue is meritless.

For the foregoing reasons, we find that the PCRA Court did not err in dismissing Appellant's petition.

Order affirmed.

Judge Murray joins.

Judge Olson concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/27/2026